**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SAMUEL E. AUSTIN,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**CITY OF OAKLAND.,** *et al.***,**<br><br>**Defendants.** | **Case No.: 17-CV-03284 YGR**<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Dkt. Nos. 57, 62 |

On March 14, 2018, plaintiff Samuel E. Austin, proceeding *pro se*, filed a second amended complaint ("SAC") alleging four causes of action: two under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e ("Title VII") for gender and racial discrimination (Count I) and hostile work environment namely for sexual harassment (Count III); and two more under the Americans with Disabilities Act, 42 U.S.C. 12101 (the "ADA") for failure to accommodate (Count II) and retaliation (Count IV). The SAC charged a litany of defendants, including Equal Opportunity Program Administrator Barbara A. Sylvester; Barbara J. Parker and Selia M. Warren of the City of Oakland's Attorney's Office; Oakland Police Department Deputy Chief John Lois; Assistant Mayor Sabrina Landreth; Public Works manager Darin Minor; Marco Torres; Everett Cleveland; Roslyn Ratliff; Jemea Jeffrey; Yolanda Lopez, Debbie Corso; Kip Walsh; Adama Wilson; Dwight McElroy; Shelia Stolin (the "City Individual Defendants"); and the City of Oakland (the "City") (collectively, "City

Defendants") as well as Steve Pitocchi of the Local 1021 Service Employees International Union (collectively with City Individual Defendants, "Individual Defendants"). (Dkt. No. 50.)

On February 27, 2018, plaintiff also filed a second action, *Austin v. City of Oakland, et al*, 18-cv-1329 ("*Austin II*"). *Austin II* alleges essentially the same facts and legal theories as those alleged in the SAC, as well as an apparent additional cause of action for racial discrimination, against the City and Service Employees International Union, Local 1021 (the "Union").[1] (*Id.*) On March 27, 2018, the Court consolidated *Austin II* with the instant matter. (*Austin v. City of Oakland, et al*, 18-cv-1329, Dkt. No. 11.)

All defendants now move to dismiss all counts alleged in the SAC, as well as in *Austin II*. (Dkt. Nos. 57, 62.) City Defendants move to dismiss for failure to state a claim under Rule 12(b)(6). (Dkt. No. 57, City Defendants' Motion to Dismiss & Strike ("City Motion").) Union Defendants move to dismiss for insufficient service under Rule 12(b)(5) and lack of subject matter jurisdiction under Rule 12(b)(1). (Dkt. No. 62, Union Defendants' Motion to Dismiss ("Union Motion").) City Defendants also move to strike Austin's claim for racial discrimination under Rule 12(f). (City Motion.)

Having carefully considered the pleadings, the papers submitted, and oral arguments on May 15, 2018, and for the reasons set forth more fully below, the Court hereby **GRANTS** defendants' motions to dismiss and **DISMISSES WITH PREJUDICE** all of Austin's claims other than those of racial discrimination against the City and the Union, which are **DISMISSED WITHOUT PREJUDICE**. Thus, Austin may file a third amended complaint regarding *only* his claim of racial discrimination against the City and the Union. Additionally, the Court hereby **DENIES** City Defendants' motion to strike.

---

[1] Defendants Steve Pitocchi and the Union are referred to herein collectively as the "Union Defendants."

## I. BACKGROUND

In March of 2013, Austin began working as a part-time custodian in the City of Oakland's Public Works Administration, ("Public Works"). (SAC ¶ 23.) In early 2014, Austin applied for and obtained a full-time custodian position. (City Motion at 3).[2] Austin remained a full-time custodian with Public Works until his termination in February 2017. (SAC ¶ 65.)

Over the course his employment, Austin was allegedly involved in a number of incidents in which he engaged in hostile and aggressive behavior toward his coworkers and supervisors. (*See Id.* ¶¶ 24–49.) In October 2016, the City filed a petition for a workplace violence restraining order against Austin with the Alameda County Superior Court. (*Id.* ¶ 59.) The City also conducted a threat assessment of Austin and discovered that, contrary to Austin's representations when he applied for a full-time custodian position, he had previously been convicted of multiple felonies. (*Id.* ¶¶ 60-64.) Following a hearing at which Austin testified, the Alameda County Superior Court issued a three-year restraining order against Austin. (Dkt. No. 32, Request for Judicial Notice ("RJN"), Ex. A.) Following a subsequent administrative investigation and hearing, the City determined that Austin knowingly misled the City by omitting material information on his Criminal History Form and terminated Austin's employment, effective February 8, 2017. (*See* SAC at ¶ 65.)

Austin now alleges that on November 10, 2016, he filed an administrative charge against Public Works with the Equal Employment Opportunity Commission ("EEOC") regarding gender and disability discrimination as well as retaliation, and the EEOC refused to issue a right-to-sue letter.[3]

---

[2] Defendants aver that as part of the application process, Austin completed a "Conviction History Form" in which he was asked whether he had "ever been convicted of any crime by any court, including a military court? A conviction includes a plea, verdict or other finding of guilt." In response to that question, Austin allegedly marked "No."

[3] Austin previously alleged that he first filed a complaint against Public Works with EEOC on February 10, 2017. (Dkt. No. 11, First Amended Complaint ("FAC") at 15.) Note that Austin also appears to suggest that he filed an EEOC charge on November 4, 2016. (SAC ¶ 13.) In *Austin II*,

3

(*Id.* ¶ 70.) On February 10, 2017, Austin filed a second complaint with EEOC regarding the same. (*Id.*) On February 24, the EEOC issued Austin a right-to-sue letter, which Austin alleges he received on February 27, 2017.[4] (*Id.*) Next, Austin alleges that on September 25, 2017, he filed a charge with the EEOC regarding racial discrimination.[5] (*Austin II* ¶ 15.) Plaintiff appears to say that he received a right-to-sue letter that encompassed the racial charge on November 30, 2017, but it is not clear, as no such letter has been submitted. (*Id.*) This lawsuit ensued.

## II.  LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

plaintiff seems to say that he filed his initial EEOC complaint on November 10, 2016 and that the EEOC would have known of the City's intent to terminate Austin as the City suspended him on November 4, 2016. (*Austin II* ¶ 15.) For the purposes of evaluating the instant motions, the Court will interpret Austin's various submissions to mean that he filed his "initial EEOC Complaint" on November 10, 2016. (*See Id.*)

[4] Austin has attached this letter to his first complaint. (Dkt. No. 1 at 16-17.) The letter provides notice of rights to sue under Title VII, the ADA, the Genetic Information Nondiscrimination Act, or the Age Discrimination Act. (*Id.*) Austin has not provided any other right-to-sue letter.

[5] Austin alleges that he filed his race-based discrimination complaint with EEOC on September 25, 2018, a date which has not yet passed. (*Austin II* ¶ 15). The Court will assume that Austin intended to write September 25, 2017.

4

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678–79. Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). *Pro se* pleadings must satisfy the same standard. *See Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995) (finding that courts must construe *pro se* pleadings liberally, but "those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong.")

**B. Motion to Dismiss Under Rule 12(b)(1)**

Federal courts will dismiss claims under Rule 12(b)(1) for lack of subject matter jurisdiction when plaintiff fails to exhaust administrative remedies. *See Sommatino v. United States*, 255 F.3d 704, 707-10 (9th Cir. 2011). To establish federal subject matter jurisdiction over causes of action brought under Title VII and the ADA, a plaintiff must "exhaust her EEOC administrative remedies before seeking federal adjudication of her claims." *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1004); *see also Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006); *Jasch v. Potter*, 302 F.3d 1092, 1095-96 (9th Cir. 2002).

**C. Motion to Dismiss Under Rule 12(b)(5)**

Under Rule 12(b)(5), a complaint may be dismissed for insufficient service of process with respect to the complaint. Rule 4(h)(1) governs service of process for corporations, partnerships, and associations in a United States judicial district. For such service, the Rule provides two methods: (1) in a manner set forth in the relevant state law, or (2) by delivering the process to an officer or other agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(h)(1).

United States District Court
Northern District of California

### D. Motion to Strike Under Rule 12(f)

Rule 12(f) allows a court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading. A court may grant a motion to strike where "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *5 (N.D. Cal. Jan. 4, 2018). The purpose of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sydney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

## III. DISCUSSION

### A. All Claims Against The Individual Defendants

Between the SAC and *Austin II*, plaintiff asserts claims under Title VII and the ADA against seventeen Individual Defendants. (SAC ¶¶ 72, 86, 122, 143, 152.) Aside from Austin's claim based on racial discrimination under Title VII, the Court previously dismissed all of his claims as to these Individual Defendants. (Dkt. No. 42 ("Prior Order") at 3–4.) Austin does not include any new allegations in support of these claims. Therefore, the Court reaffirms its prior dismissal, this time with prejudice.

With respect to Austin's remaining claim for racial discrimination, only an "employer" may be held liable under Title VII or the ADA. *See* 42 U.S.C. §§ 2000e(b); 2000e-3(a); 42 U.S.C. § 12111(5)(a). Title VII does not impose liability on individual supervisors or other employees. *See Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007) ("Title VII does not provide a separate cause of action against supervisors or co-workers."). Therefore, the Court reaffirms its previous decision (*see* Prior Order at 3–4) and **GRANTS** defendants' motions to dismiss as to the Individual Defendants and **DISMISSES WITH PREJUDICE** all claims against the Individual Defendants

asserted in the SAC and the *Austin II* complaint.[6] *See Morrow v. City of Oakland*, 690 Fed. Appx. 517, 518 (9th Cir. 2017) (affirming dismissal of Title VII claims against individual defendants). Because the Court once again grants defendant's motions to dismiss as to the Individual Defendants *with prejudice*, **Austin may not include the Individual Defendants in his third amended complaint**. *See Turner v. Advantage N.W. Credit Union*, 2011 WL 2293095, at *3 (D. Or. June 3, 2011).

### B. All Claims Against the Union

Plaintiff's complaint in *Austin II* adds the Union as a defendant to each of his previously asserted claims of gender discrimination and hostile work environment due to sexual harassment under Title VII and failure to provide reasonable accommodation and retaliation under the ADA, as well as a new apparent claim of racial discrimination under Title VII. Although each of these claims fail for the reasons articulated below, they also fail due to Austin's failure to exhaust administrative remedies with respect to the Union.

Austin alleges that he filed an administrative charge against *the City* with the EEOC regarding gender and disability discrimination as well as retaliation on November 10, 2016. (SAC ¶ 70.) He subsequently filed a second complaint on February 10, 2017 and received a right-to-sue letter on February 27, 2017. (*Id.*) However, Austin does not allege that he ever filed a complaint with the

---

[6] Austin's claim for racial discrimination against the Individual Defendants fails for the additional reason that Austin did not exhaust administrative remedies as to the Individual Defendants. Before initiating a federal action alleging violations of Title VII, a plaintiff must file an administrative charge with the EEOC and receive a right-to-sue letter. *See Jasch v. Potter,* 302 F.3d 1092, 1094 (9th Cir. 2002) (noting that in order to bring a Title VII cause of action, a plaintiff must first exhaust his administrative remedies, including compliance with the administrative procedures developed by the EEOC). Here, Austin alleges that he filed an administrative charge against the City, but he does not allege that he filed a charge against any of the Individual Defendants. (*See* SAC ¶ 67.)

The Court also notes that as Austin's claims against Union Defendant Pitocchi are dismissed with prejudice, any third amended complaint shall not address Pitocchi. Therefore Union Defendants' motion to dismiss under Rule 12(b)(5) on behalf of defendant Pitocchi is **DISMISSED AS MOOT**.

7

EEOC against *the Union*. Therefore, Austin has failed to allege that he has "exhaust[ed] [his] EEOC administrative remedies before seeking federal adjudication of [his] claims" against the Union as required to establish federal subject matter jurisdiction. *See EEOC*, 31 F.3d at 899.

Accordingly, Union Defendants' motion to dismiss as to the Union is **GRANTED** with leave to file a third amended complaint.[7] Austin's third amended complaint **must allege** facts sufficient to show that he exhausted his EEOC administrative remedies with respect to the Union.

### C. Count I: Gender & Race Discrimination under Title VII (City and Union)

To state a *prima facie* case of gender or race discrimination under Title VII, Austin must allege that he (1) belongs to a protected class, (2) performed his job satisfactorily, (3) suffered an adverse employment action, and (4) was treated differently because of his membership in the protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (internal citation omitted). To establish the fourth element, Austin must allege either direct evidence of discrimination, such as derogatory comments about his gender or race, or circumstantial evidence, "which may include allegations that similarly situated individuals outside [his] protected class were treated more favorably or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination." *McCarthy v. Brennan*, 2016 WL 946099, at *4. (N.D. Cal. 2016).

First, as in his FAC, Austin once again fails to allege facts sufficient to raise a plausible inference that he received different treatment *because of his gender*. Instead, Austin again alleges several contentious incidents involving his coworkers and supervisors and asserts that these incidents

---

[7] The Court understands that the Union received a summons and complaint in *Austin II* on May 3, 2018. (Dkt. No. 78 at 5.) Therefore, Union Defendant's motion to dismiss under Rule 12(b)(5) for insufficient service of process is **DENIED AS MOOT**. Additionally, because the Court dismisses Austin's claims against the Union Defendants for the reasons discussed above, the Court need not reach Union Defendants' second motion to dismiss, filed May 24, 2018 at Docket Number 78. Thus, Union Defendants' motion to dismiss under Rule 12(b)(6) is **DENIED AS MOOT**.

constitute gender discrimination. (SAC ¶¶ 75-121.) Likewise, he has failed to allege facts in support of his new claim of racial discrimination that are sufficient to raise a plausible inference that he received different treatment *because of his race*. Austin points to a hearing that took place at the Oakland Policy Department immediately prior to his termination, in which all members of the panel were "white law enforcement officials and city attorneys," as evidence of racial discrimination.[8] (*Austin II* ¶ 23.) The mere fact that contentious incidents occurred or that members of the panel were "white" is insufficient to raise a plausible inference that Austin was treated differently *because* of his gender or his race. *See Cornwell*, 439 F.3d at 1028; *Knox v. Donahoe*, 2012 WL 949030, at *7 (N.D. Cal. Mar. 20, 2012). Stated differently, arguments and disagreement are not enough. To state a claim, Austin must allege something more to show how he was "treated differently" *because* of his gender or race.

Second, the Court believes the claims are also time-barred. With respect to Austin's new claims of racial discrimination, plaintiff alleges that he first filed his charge regarding racial discrimination with the EEOC on September 25, 2017. (*Austin II* ¶ 15, *see* n. 3, *supra*.) The law requires an administrative claim to be filed within 180 days of the alleged unlawful activity. 42 U.S.C. § 2000e5. Thus, for a claim filed on September 25, 2017, the alleged unlawful activity must have occurred during the 180-day period beginning March 29, 2017. Here, Austin does not allege any unlawful activity in that timeframe. Rather the complaints concern his termination on February 8, 2017, (s*ee* SAC at ¶ 65,) well before March 29, 2017. Thus, with respect to that claim, Austin must have exhausted his administrative remedies. His failure to do so would require dismissal of the claim. *See Jasch*, 302 F.3d at 1094. *See also Sommatino*, 255 F.3d 704, 711 (9th Cir. 2001) (dismissing a

---

[8] Austin also notes the racial background of several individuals in *Austin II*. (*See e.g.*, *Austin II* ¶¶ 29-30.)

9

claim under Rule 12(b)(1) for lack of subject matter jurisdiction based on plaintiff's failure to exhaust administrative remedies).

With respect to Austin's claims of gender discrimination, as the Court previously noted, those incidents which occurred *prior* to May 14, 2016 are also time-barred. (*See* Prior Order at 5 n.5.) Austin alleges that he first filed his charge with the EEOC regarding gender discrimination on November 10, 2016. (SAC ¶ 70.) Using the same analysis as above, the alleged unlawful activity must have occurred within the 180-day period beginning May 14, 2016. Thus, to the extent that the SAC relies on alleged incidents of gender discrimination occurring before May 14, 2016, such claims are time-barred for failure to exhaust administrative remedies. *See Jasch*, 302 F.3d at 1094.

The Court previously dismissed Austin's claims of gender discrimination under Title VII. (Prior Order at 4–5.) Because Austin's SAC does not address the defects articulated in the Court's prior dismissal (*see id.*), the Court reaffirms its prior dismissal *with prejudice*. Therefore, the Court reaffirms its previous decision and **GRANTS** City and Union's motions to dismiss Count I and **DISMISSES WITH PREJUDICE** Austin's claims of gender discrimination under Title VII. Because the Court grants defendants' motions to dismiss as to Austin's claims of gender discrimination *with prejudice*, **Austin may not include claims of gender discrimination under Title VII in his third amended complaint**. *See Turner*, 2011 WL 2293095, at *3.

Accordingly, defendants' motions to dismiss Count I is **GRANTED** with leave to file a third amended complaint with respect to the claim of racial discrimination *only*.[9] Austin's third amended complaint must include allegations to show that (i) his claims of racial discrimination are not time-

---

[9] Additionally, the Court **DENIES** City Defendants' motion to strike Austin's claim of racial discrimination under Rule 12(f). Rule 12(f) allows a court to strike from a pleading any matter that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. Pro. 12(f). Because Austin's apparent claim of racial discrimination is not redundant, immaterial, impertinent, or scandalous, the Court does not find grounds to strike his claim under Rule 12(f).

10

barred and (ii) he was treated differently because of his race. To do so, he must include either (1) direct evidence of discrimination, such as derogatory comments about his race, or (2) circumstance evidence of discrimination, such as allegations that similarly situated individuals who are not members of his race received more favorable treatment. *McCarthy*, 2016 WL 946099, at *4.

### D. Count III: Hostile Work Environment Due to Sexual Harassment under Title VII (City and Union)

To state a claim for sexual harassment causing a hostile work environment, Austin must allege "(1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016). The conduct must be so "extreme as to amount to a change in the terms and conditions of employment." *Id.* (internal quotation marks omitted). Courts determine whether an environment is sufficiently hostile by examining "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks omitted). "The absence of any tangible job detriment requires a commensurately higher showing that the sexually harassing conduct was pervasive and destructive of the working environment." *Kob v. Cnty. of Marin*, 2009 WL 10680775, at *7 (N.D. Cal. Nov. 25, 2009) (internal quotation marks omitted). One isolated incident generally is not sufficient to establish a hostile work environment claim. *Craig*, 496 F.3d at 1055-56 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000) ("If a single incident can ever suffice to support a hostile work environment claim, the incident must be extremely severe.").

11

As in his FAC, Austin concedes that the alleged harassment did not "deprive [him] of any tangible job benefit." (SAC ¶ 145.) Austin again points only to a single incident in which a coworker sent him a vulgar text message. (*Id.*) He does not allege physical implications of a sexual nature or that the text messages interfered with his work performance. *See Geo Grp.*, 816 F.3d at 1206. The Court thus finds that this incident fails to raise a plausible inference that defendants' conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id*.

The Court previously dismissed Austin's claims of hostile work environment due to sexual harassment under Title VII. (Prior Order at 5–6.) Because Austin's SAC does not address the defects articulated in the Court's prior dismissal (*see id.*), the Court reaffirms its prior dismissal *with prejudice* and **GRANTS** defendants' motions to dismiss Count III. Austin's claims of hostile work environment due to sexual harassment under Title VII are **DISMISSED WITH PREJUDICE**. Because the Court grants defendants' motions to dismiss *with prejudice*, **Austin may not include claims of hostile work environment due to sexual harassment under Title VII in his third amended complaint**. *See Turner*, 2011 WL 2293095, at \*3.

### E. Count II: Failure to Provide a Reasonable Accommodation under the ADA (City and Union)

To state a *prima facie* case for failure to provide a reasonable accommodation under the ADA, Austin must plead facts showing that (1) he had a disability; (2) he actually requested an accommodation; (3) the requested accommodation was reasonable; and (4) the request was refused. *Huynh v. Harasz*, 2016 WL 2757219, at \*11 (N.D. Cal. May 12, 2016). As in his FAC, Austin's claim fails for two reasons: First, Austin again has not alleged facts to support his claim that he had a *qualifying* disability under the ADA. Second, Austin again has not alleged facts showing that he

12

notified the City of a qualifying disability or requested an accommodation in connection with a qualifying disability.

As noted, the SAC must, and does not, allege a *qualifying* disability under the ADA. Specifically, the SAC must allege (1) that Austin had a physical or mental impairment, (2) that the particular life activity on which he relies constitute a major life activity, and (3) that his alleged impairment substantially limits his ability to perform the identified major life activity. *See Gribben v. Utd. Parcel Serv., Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). Further it must "must allege [the] disability with specificity" and "specify what major life activities his disability limits." *Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 907-08 (N.D. Cal. 2015); *see also Bell v. Univ. of Cal. Davis Med. Ctr.*, 2013 WL 1896318, at *4 (E.D. Cal. May 6, 2013) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998); *Gribben v. Utd. Parcel Serv., Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008)).

Here, once again, Austin alleges generally that he has an "immune deficiency disorder and P.T.S.D." and that his back "goes out . . . from time to time." (SAC ¶¶ 124, 126.) He further alleges that those conditions impact "[m]ajor bodily functions [and] function of the immune system." (*Id.*) Austin also alleges that he asked his supervisor for a chair to sit on while working. (*Id.* ¶¶ 31, 126, 130.) As the Court noted in its dismissal of Austin's FAC, these allegations are insufficient. (*See* Prior Order 6–7.) As in his FAC, Austin again fails to specify which "major life activities" are impacted and how his alleged conditions actually impact these activities. *See Bell*, 2013 WL 1896318, at *4; *Alejandro*, 129 F. Supp. 3d at 907-08; *Lacayo v. Donahoe*, 2015 WL 993448, at *17 (N.D. Cal. Mar. 4, 2015) (dismissing claims where the plaintiff failed "to specify which condition was purportedly the basis of a discriminatory employment action"); *Jackson v. Napolitano*, 2010 WL 94110, at *5 (D. Ariz. Jan. 5, 2010) (finding complaint insufficient where plaintiff failed to identify

specifically the nature of his purported impairment and "how that impairment substantially limits one or more of his major life activities").

Next**,** Austin has not alleged facts that show he notified the City of his purported disability or requested a relevant accommodation. *See Bell*, 2013 WL 1896318, at *4; *Lacayo*, 2015 WL 993448, at *17. The mere allegation that he asked for a chair is not itself sufficient to show that he informed his supervisor of his purported disability, or that he required the chair as an accommodation which was related to that disability.

Notwithstanding the foregoing, the claim appears time-barred. Here, plaintiff filed an administrative charge with the EEOC on November 10, 2016. Thus, as noted before, the conduct at issue must fall within the 180-day period beginning May 14, 2016. Here, Austin alleges that the incident occurred in March 2016, which would mean it is time-barred.

The Court previously dismissed Austin's claims of failure to provide reasonable accommodation under the ADA. (Prior Order at 6–7.) Because Austin's SAC does not address the defects articulated in the Court's prior dismissal (*see id.*), the Court reaffirms its prior dismissal *with prejudice* and **GRANTS** defendants' motions to dismiss Count II. Austin's claims of failure to provide reasonable accommodation under the ADA are **DISMISSED WITH PREJUDICE**. Because the Court grants defendants' motions to dismiss *with prejudice*, **Austin may not include claims of failure to provide a reasonable accommodation under the ADA in his third amended complaint**. *See Turner*, 2011 WL 2293095, at *3.

### F. Count IV: Retaliation for Seeking a Reasonable Accommodation under the ADA (City and Union)

To state a claim of retaliation under the ADA, Austin must show that "(1) he engaged in a statutorily protected activity (*i.e.,* that he protested or otherwise opposed unlawful employment discrimination directed against employees protected by Title VII); (2) subsequently, he suffered an

14

adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Johnson v. Eckstrom*, 2011 WL 5975039, at *2 (N.D. Cal. 2011) (citing *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004)). To raise the inference of causation necessary to state a *prima facie* case for retaliation, the alleged protected activity must be "very close" in time to the adverse action. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Here, Austin's retaliation claim fails for two reasons: First Austin does not allege facts sufficient to show that he engaged in protected activity related to his alleged disability. Second, the SAC does not allege facts to establish a causal link between protected activity and an adverse employment action.

First, as discussed above Austin fails to allege facts to support his claim that he engaged in statutorily protected activity by requesting an accommodation or notifying the City of his purported disability. *See* Section III.D, *supra*.

Second, and in any event, Austin's SAC, like his FAC, does not allege facts to show a causal link between a protected activity and an adverse employment action. The SAC again references three alleged adverse employment actions, namely the City's (i) denial of Austin's complaint to the City's Equal Opportunity Program ("EOP") on July 18, 2016; (ii) petition for a workplace violence restraining order against Austin; and (iii) termination of Austin's employment. Regarding the EOP complaint, Austin concedes that EOP denied his claim on July 18, 2016 because it did not relate to a purported disability or any other protected characteristic. (SAC ¶¶ 43, 104, 100-02.) Thus, the SAC fails to allege a causal connection between the EOP denial and protected activity. Next, regarding both the petition for a workplace violence restraining order and Austin's termination, again plaintiff does not allege a causal link with protected activity. Specifically, Austin alleges no facts which suggest that either the restraining order or Austin's termination was connected to his alleged disability or his alleged request for a related accommodation.

15

Moreover, the Court highlights the separation in time between Austin's request for a chair and the petition for a restraining order (seven months), EOP petition denial (ninth months) and termination (eleven months). Generally, adverse employment actions which occur more than four months after allegedly protected activity are not sufficiently close in time to raise an inference of causation. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997), *cited with approval in Breeden*, 532 U.S. at 273, (three-month period not sufficiently close); *see also Quiroz v. Horel*, 85 F.Supp.3d 1115, 1127 (N.D. Cal. 2015) (holding a six-month separation insufficiently close "to support a finding of retaliatory motive" and noting that other cases have found "periods of three and four months too long"); *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 398–99 (7th Cir. 1999) (finding four months too long), *cited with approval in Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *see also Johnson*, 2011 WL 5975039, at *3 (finding just under three months too long).

Austin appears to argue that he raised the issue of his alleged disability in a motion he filed in state court in response to the City's petition for a workplace violence restraining order. (Dkt. No. 40, Ex. A ("Austin Response to Petition").) However, Austin's state court filing fails to (i) identify a purported disability or (ii) link that purported disability to an adverse employment action.

The Court previously dismissed Austin's claims of retaliation under the ADA. (Prior Order at 7–9.) Because Austin's SAC does not address the defects articulated in the Court's prior dismissal (*see id.*), the Court reaffirms its prior dismissal *with prejudice*. Therefore, the Court **GRANTS** defendants' motions to dismiss Count IV and **DISMISSES WITH PREJUDICE** Austin's claims of retaliation under the ADA. Because the Court grants defendants' motion to dismiss *with prejudice*, **Austin may not include claims of retaliation under the ADA in his third amended complaint**. *See Turner*, 2011 WL 2293095, at *3.

### G. Punitive damages

The Court previously dismissed Austin's request for punitive damages with prejudice. (Prior Order at 9.) The Court reiterates that punitive damages are not available against governmental entities for claims under Title VII or the ADA. *Hines v. Cal. Pub. Utilities Comm'n*, 2008 WL 2631361, at *11 (N.D. Cal. June 30, 2008); *Peacock v. Terhune*, 2002 WL 459928, at **3-5 (E.D. Cal. Jan. 23, 2002).

The Court repeats its ruling and, thus, Austin's request for punitive damages is **DISMISSED WITH PREJUDICE**. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (2010) (holding that Rule 12(b)(6) is the proper mechanism for challenging a request for damages that are unavailable as a matter of law). Because the Court dismisses Austin's request for punitive damages *with prejudice*, **Austin may not include a request for punitive damages in his third amended complaint**. *See Turner*, 2011 WL 2293095, at *3.

### IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Defendants' motions to dismiss Austin's claims against the Individual Defendants is **GRANTED.** Austin's claims against the Individual Defendants are **DISMISSED WITH PREJUDICE**. Therefore, Austin's third amended complaint *may not include* the claims against Barbara A. Sylvester, Barbara J. Parker, Selia M. Warren, John Lois, Sabrina Landreth, Darin Minor, Marco Torres, Everett Cleveland, Roslyn Ratliff, Jemea Jeffrey, Yolanda Lopez, Debbie Corso, Kip Walsh, Adama Wilson, Dwight McElroy, Shelia Stolin or Steve Pitocchi.

2. Defendants' motions to dismiss Austin's claims against the City and the Union are **GRANTED** as follows: [10]

   a. Austin's claims of gender discrimination and hostile work environment due to sexual harassment under Title VII, as well as his claims of failure to provide reasonable accommodation and retaliation under the ADA are **DISMISSED WITH PREJUDICE**. Therefore, Austin's third amended complaint *may not include* claims of gender discrimination under Title VII or of failure to provide reasonable accommodation and retaliation under the ADA.

   b. Austin's claims of racial discrimination against the City and the Union are **DISMISSED** with leave to amend to show how he was treated differently because of his race. However, he must also include allegations which show the claims are not time-barred.

      i. For his claims of racial discrimination against the Union, Austin must also allege facts sufficient to show that he exhausted his EEOC administrative remedies against the Union prior to filing the instant lawsuit.

      ii. Additionally, Austin's third amended complaint *may not include* a request for punitive damages.

The Court advises plaintiff that a Handbook for Pro Se Litigants, which contains helpful information about proceeding without an attorney, is available in the Clerk's office or through the Court's website, http://cand.uscourts.gov/pro-se.

The Court also advises plaintiff that additional assistance may be available by making an appointment with the Legal Help Center. **There is no fee for this service**. To make an appointment with the Legal Help Center in San Francisco, Plaintiff may visit the San Francisco Courthouse,

---

[10] Plaintiff filed an opposition/response to Union Defendants' motion to dismiss on May 15, 2018. (Dkt. No. 76.) This filing is untimely, however it does not change the result.

located at 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, California, 94102, or call 415/782-9000 (ext. 8657). To make an appointment with the Legal Help Center in Oakland, plaintiff may visit the Oakland Courthouse, located at 1301 Clay Street, 4th Floor, Room 470S, Oakland, California, 94612, or call 415/782-8982. The Help Center's website is available at http://www.cand.uscourts.gov/helpcentersf.

To the extent Austin has a basis for filing a third amended complaint with respect to discrimination on the basis of race *only* which conforms to the rulings in this order, he must do so by **June 30, 2018**. Failure to do so will result in the dismissal of the complaint. This Order terminates Dkt. Nos. 57, 62.

**IT IS SO ORDERED.**

Date: May 30, 2018

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**